UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
CARMELO COGLITORE,                      :
                        Plaintiff,      :
                                        :    11 Civ. 3683 (DLC)
            -v-                         :
                                        :    OPINION & ORDER
MICHAEL J. ASTRUE, COMMISSIONER OF      :
SOCIAL SECURITY                         :
                        Defendant.      :
                                        :
----------------------------------------X

Appearances:

For Plaintiff:
Herbert S. Forsmith
26 Broadway 17th Floor
New York, NY 10004

For Defendant:
John E. Gura, Jr.
United States Attorney's Office
86 Chambers Street, 3rd Floor
New York, NY 10007

DENISE COTE, District Judge:

    Plaintiff Carmelo Coglitore ("Coglitore") brings this

action pursuant to § 205(g) of the Social Security Act ("the

Act"), 42 U.S.C. § 405(g), seeking review of the final decision

of the Commissioner of Social Security ("Commissioner") denying

his eligibility for Disability Insurance Benefits ("DIB").  The

Commissioner has moved for judgment on the pleadings affirming

his final decision.  Coglitore has cross-moved for judgment on

1

the pleadings.  For the following reasons, the Commissioner's
motion is granted and the plaintiff's motion is denied.


BACKGROUND

The following facts are taken from the administrative
record and are undisputed.  Coglitore was born in 1948 in
Limina, Italy and has a high school education.  He has worked
primarily as a mason and construction worker, specializing in
the cutting and setting of stone, tile, and marble.  On October
9, 2008, Coglitore submitted an application for DIB for the
period beginning June 15, 2000 and ending December 31, 2005.  To
be eligible for DIB, an applicant must be insured.  As a worker
earns wages and pays taxes, he can accumulate "quarters of
coverage" under the SSA during which he receives insured status
and qualifies for DIB.  Coglitore's quarters of coverage, and
thus his insured status, expired on December 31, 2005.

Per his own admission, Coglitore was self-employed for much
of the time between June 15, 2000 and December 31, 2005.  In
2004 Coglitore was working 35 hours per week with the assistance
of his sons and earning between $300 and $350 per week.
Coglitore alleges, however, that he was disabled during this
period due to lower back pain, diabetes, a history of sepsis and
pneumonia, hypertension, high cholesterol, depression and

2

anxiety, Dupuytrens Contracture, right palmar and digital fasciectomies, and a history of contusion of the left elbow.

I. Medical Record

A. Medical History Prior to Coglitore's Onset Date

In October 1999, Coglitore was admitted to Montefiore Medical Center presenting with fever, chills, and generalized malaise.  He was diagnosed with pneumonia, sepsis, and diabetes. Coglitore reports that he was first diagnosed with diabetes at the age of 20, and that since then he has been treated for diabetes with insulin.  Coglitore was administered antibiotics and discharged in satisfactory condition after four days.

B. Medical History Following Coglitore's Onset Date

The first medical record pertaining to Coglitore's reported period of disability dates from April 27, 2005.  On that date, Coglitore visited Dr. Roy Kulick, an orthopedist, for complaints relating to thickening in the palms of both hands and increased contracture in the right hand.  Coglitore reported having no pain.  On the right hand, Dr. Kulick noted a metacarpal phalangeal ("MP") joint contracture of thirty degrees and a proximal interphalangeal ("PIP") joint contracture of forty degrees on the small finger and a PIP joint contracture of twenty degrees on the ring finger. On the left hand, the long, ring, and small fingers all exhibited MP joint contractures of

3

twenty degrees.  The PIP joints of the ring and small fingers had contractures of 10 degrees.  Both hands had full flexion. Dr. Kulick suspected Dupuytren's contracture, a thickening and contracting of the tissue underneath the skin of the palms and fingers.  He recommended a palmar fasciectomy on the right hand, a procedure that involves the excision of the diseased tissue.

On October 1, 2005, Coglitore underwent palmar and digital fasciectomies on his right hand, performed by Dr. Kulick.  Full release of the contracture was achieved.

In a follow-up visit three weeks after the procedure, Dr. Kulick noted that the "transverse incision is almost healed" and that the patient's hand function was "quite good."  On December 12, 2005, Coglitore complained of some discomfort in his forearm when making a fist with force, but Dr. Kulick found no tenderness upon palpitation and suspected mild tendinitis.  Dr. Kulick also examined the patient's left hand and informed him that a left-hand fasciectomy was likely to be necessary in the future.  As of this date, however, Coglitore has elected not to undergo a left-hand fasciectomy.

On December 21, 2005, Coglitore presented with left elbow pain and swelling in the emergency room of Montefiore Hospital. He alleged that he was hit in the elbow by the side mirror of a passing car.  An x-ray revealed calcification of the blood

4

vessels and a large olecranon spur, a bony projection that forms along the joint margins of a bone in the forearm that projects behind the elbow.  Coglitore was diagnosed with an elbow contusion and prescribed Motrin.

Coglitore reports having experienced depression and anxiety prior to December 31, 2005.  There is no evidence in the record that he ever sought medical attention for these issues. Coglitore also alleges that he has suffered lower back pain since June 2000, although he admits he had no trouble walking, standing, or sitting prior to December 31, 2005.

C. Medical History Following the Expiration of Coglitore's Coverage Period

This Court has considered the medical history submitted for the period after the expiration of Coglitore's insured status, although it is not directly relevant to the determination in this case.  Coglitore continued his follow-up appointments with Dr. Kulick in 2006.  During an April 3rd appointment, Coglitore reported that he had "returned to his regular work," but he felt some pain in his hand when gripping a hammer.  Dr. Kulick found no tenderness in the affected area.

On February 1, 2007, Coglitore saw Dr. Francis Porreca, a vascular surgeon, for edema in his left foot and ankle.  He also noted that in November 2006 he had experienced a sudden onset of pain and swelling in his left calf and ankle, but the pain had

since subsided.  Dr. Porreca suspected acute calf vein thrombophlebitis, which involves the inflammation of a vein as a result of a blood clot, and recommended the use of a support stocking.

On August 21, 2008, Coglitore visited Dr. Lyzette Velasquez, a neurologist, for chronic pain in his right hip and lower back radiating forward toward his right thigh.  The pain had begun the year before, but had worsened significantly in the prior few months.  Dr. Velasquez diagnosed lumbar radiculopathy, also known as sciatica, with stenosis, which is a narrowing of the blood vessels.  Coglitore was administered epidural steroid injections and physical therapy, but neither treatment was effective in alleviating his pain.  In a clinic note dated August 3, 2009, Dr. Velasquez stated that Coglitore has been unable to work as of 2008 due to his lower back condition.

On January 20, 2009, Coglitore sought the medical opinion of Dr. Nathaniel L. Tindel, an orthopedic surgeon, for his back pain.  Dr. Tindel found that the patient suffered from degeneration of spinal discs, right lumbar radiculopathy (commonly known as sciatica), and lumbar spinal stenosis, which involves a narrowing of the spinal canal resulting in the compression of the spinal cord.  As of this date, Coglitore has not been able to find relief for his back pain.

6

On May 18, 2009, Coglitore went to Dr. Chaiyaporn Kulsakdinun, an orthopedist, with complaints of right elbow pain lasting three weeks.  An examination revealed olecranon bursitis, a condition characterized by the swelling of the bursa, a fluid-filled sac near the joint.  Dr. Kulsakadinun drained some fluid from the bursa and recommended icing the elbow.

II.  The ALJ's Decision

Coglitore applied for DIB on October 9, 2008.  He alleged that from June 15, 2000 until December 31, 2005, he was disabled due to lower back pain, diabetes, history of sepsis and pneumonia, hypertension, high cholesterol, depression and anxiety, Dupuytrens Contracture, right palmar and digital fasciectomies, and history of contusion of the left elbow.  His claim was initially denied on December 11, 2008.  Coglitore timely requested a hearing before an ALJ on January 15, 2009. The hearing before ALJ Rosanne M. Dummer took place on December 17, 2009.  The ALJ appeared by videoconference from Baltimore, while Coglitore testified in New York.

At the hearing, Coglitore testified that, during the period from June 15, 2000 to December 31, 2005, he suffered pain in his lower back and his legs.  Because of the Dupuytren's Contracture in his right hand, Coglitore claimed he was unable to grip

7

properly and lift heavy slabs of marble and tile.  Although he
could walk, stand, and sit, Coglitore stated that he had
difficulty kneeling, and that work as a stonemason at that time
required that he both lift stone and tile and kneel down.
Coglitore said that the December 25, 2005 injury left him with
chronic pain in his left elbow, and that all these problems were
compounded by diabetes, high cholesterol, and high blood
pressure.  Coglitore also claimed to have struggled with
depression, anxiety, and forgetfulness during this time.

According to Coglitore, these physical limitations
interfered with his ability to work as a stone worker for "Crew
Sherry," where he was employed prior to 2000.  From June 15,
2000 to December 31, 2005, Coglitore worked on a self-employed
basis, and often brought his sons to assist him on jobs.

Donald R. Slive ("Slive"), a vocational expert, testified
by videoconference telephone at the hearing.  He stated that
because of Coglitore's particular skill set, there were no jobs
open to him other than that of mason/construction worker.

After Coglitore's hearing, the Administrative Law Judge
("ALJ") called upon the services of orthopedist Dr. Thomas H.
Weiss ("Weiss") as a medical expert.  On February 10, 2010, Dr.
Weiss opined that Coglitore had no significant limitations in
lifting, carrying, standing or walking during the relevant

period.  Additionally, he noted that Coglitore may have had "reduced ability [in his] bilateral hands but not to the extend [sic] of being unable to work in marble construction."

In a letter dated February 2, 2009, Dr. Salvatore Conte, Coglitore's primary physician, stated that his patient had suffered from severe lower back pain for many years.  On March 6, 2009, Dr. Conte issued a second letter stating that "Mr. Coglitore has not been able to work since November 2004."  Dr. Conte submitted a third letter on January 14, 2011, amending this alleged date of onset to June 15, 2000.  Coglitore has seen Dr. Conte once or twice a month for the past twenty-eight years.

Dr. Tindel, the orthopedic surgeon whom Coglitore visited on January 20, 2009, opined that Coglitore has been completely disabled as of January 20, 2009.  Dr. Velasquez, the neurologist whom Coglitore visited on August 21, 2008, reported on various occasions that Coglitore is disabled, should not work, and cannot perform his past work.  She stated that, to her knowledge, Coglitore's condition began in October 2008.

The ALJ issued her decision on March 23, 2010.  The ALJ found that Coglitore was not disabled within the meaning of the Act during the period spanning June 15, 2000 to December 31, 2005, and was therefore not entitled to benefits for that period.

9

The ALJ determined that Coglitore had not engaged in substantial gainful activity during the period from his alleged onset date to the date his coverage expired.  Although Coglitore testified that he had been self-employed at this time, he did not report any earnings to the Social Security Administration. For this reason, the ALJ elected to afford Coglitore the benefit of the doubt at this particular step in her evaluation.

The ALJ determined that Coglitore suffered from the following medically determinable impairments from June 15, 2000, his alleged onset date, to December 31, 2005, when his coverage expired: lower back pain, diabetes, history of sepsis and pneumonia, hypertension, high cholesterol, history of Dupuytren's Contracture, right palmar and digital fasciectomies, and history of contusion of the left elbow.  The ALJ concluded, however, that Coglitore's impairments during this period did not significantly limit his ability to perform basic work-related activities for twelve consecutive months and therefore do not qualify as severe.  As a result, the ALJ ruled that Coglitore was not disabled at any point from June 15, 2000 to December 31, 2005.

Coglitore requested review from the Social Security Administration Appeals Council ("Appeals Council") on May 25, 2010.  The Appeals Council denied this request on March 21,

10

2011, making the ALJ's decision the final decision of the Commissioner.  On May 17, 2011, Coglitore filed the complaint in this action.  The parties' cross-motions for judgment on the pleadings were fully submitted on May 4, 2012.


DISCUSSION

I.  Standard of Review

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  A determination of the ALJ may be set aside only if it is based upon legal error or is not supported by substantial evidence.  Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).  "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Furthermore, if the findings of the Commissioner as to any fact are supported by substantial evidence, those findings are conclusive.  Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995).  "Where there is substantial evidence to support either position, the

11

determination is one to be made by the factfinder." <u>Alston v.</u>
<u>Sullivan</u>, 904 F.2d 122, 126 (2d Cir. 1990).

The Commissioner will find a claimant disabled under the
Act if the claimant demonstrates the "inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or that has lasted or can be expected to last
for a continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  The claimant's impairment must be "of such
severity that he is not only unable to do his previous work but
cannot, considering his age, education, and work experience,
engage in any other kind of substantial gainful work which
exists in the national economy."  <u>Id</u>. § 423(d)(2)(A).  The
disability must be "demonstrable by medically acceptable
clinical and laboratory diagnostic techniques."  <u>Id</u>. §
423(d)(3).

The Commissioner uses a five-step process when making
disability determinations.  <u>See</u> 20 C.F.R. §§ 404.1520 & 416.920.
The Second Circuit has described the process as follows:

> First, the Commissioner considers whether the
> claimant is currently engaged in substantial gainful
> activity.  Where the claimant is not, the
> Commissioner next considers whether the claimant has
> a "severe impairment" that significantly limits her
> physical or mental ability to do basic work
> activities.  If the claimant suffers such an
> impairment, the third inquiry is whether, based

12

> solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work.  Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Jasinski v. Barnhart, 341 F.3d 182, 183-184 (2d Cir. 2003) (citation omitted).  A claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden in the final step.  Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998).

II.  Evaluation of the ALJ's Decision

The ALJ's determination that Coglitore suffered no severe impairment prior to December 31, 2005 is supported by substantial evidence in the record.  In assessing the severity of a claimant's impairment, an ALJ must determine whether the impairment significantly limits the claimant's physical or mental ability to do basic work activities.  Jasinski, 341 F.3d at 183-184.  The ALJ properly deduced that none of Coglitore's alleged impairments were sufficiently severe during the relevant period to limit significantly Coglitore's physical or mental ability to do basic work activities.

There is no evidence in the administrative record that Coglitore's diabetes, hypertension, high cholesterol, or history

13

of sepsis and pneumonia impaired him in any significant way from June 15, 2000 to December 31, 2005. At the administrative hearing, Coglitore made no mention of these particular illnesses and they are barely mentioned in Coglitore's medical records, even those pertaining to the period after the expiration of his coverage period. According to an office note pertaining to a July 2008 doctor's appointment, Coglitore reported that he had never experienced chest pain and was "fairly active his whole life."

The ALJ also determined that Coglitore's hand troubles did not present a severe impairment during the relevant period. In a series of follow-up appointments following Coglitore's palmar and digital fasciectomies, Dr. Kulick repeatedly noted that Coglitore was doing well and that he had a good range of motion in his right hand. By April 3, 2006, Coglitore reported to Dr. Kulick that he had "returned to his regular work." This evidence is substantial enough to support the conclusion that Coglitore's Dupuytren's Contracture posed no serious functional limitations prior to the expiration of his coverage.

The record also indicates that Coglitore's history of a contusion on his left elbow did not qualify as a severe impairment at any point from June 15, 2000 to December 31, 2005. Nothing in the record suggests that Coglitore's left elbow

14

condition seriously limited his ability to work, or had any significant effect on him whatsoever.  Similarly, the administrative record reveals that Coglitore never sought counseling for depression or anxiety prior to the expiration of his insured status, and the office notes relating to his other doctors' appointments do not document any complaints of depression or anxiety.

Lastly, the ALJ found that Coglitore's back pain was not a severe impairment at any time between June 15, 2000 to December 31, 2005, and substantial evidence supports this conclusion. Complaints of back pain do not appear in any of Coglitore's medical records from this period.  The first time Coglitore sought medical attention for his back pain was after his insured status had expired, on August 21, 2008.  On that date, Coglitore told his doctor that he had been having back pain for the past year and that it had significantly worsened in the past few months.  According to Coglitore, therefore, his back pain had not begun until 2007.  Furthermore, at his hearing, Coglitore testified that he was able to sit, stand and walk without difficulty prior to December 2005.  Dr. Weiss, an orthopedist and medical expert whom the ALJ consulted after Coglitore's hearing, concurred in Coglitore's assessment, opining that Coglitore did not have any limitations in his ability to lift,

carry, sit, stand, or walk during the relevant period.  This data is inconsistent with Coglitore's allegations that his back pain was so severe that it rendered him disabled prior to December 2005.

Coglitore objects to the ALJ's determination that he suffered no severe impairment prior to December 2005. Specifically, he claims that the ALJ failed to accord the appropriate weight to the Social Security Field Office's Disability Report, his Activities of Daily Living Form, the findings of Dr. Velasquez, Coglitore's own testimony, his obesity, and the testimony of vocational expert Slive.

The records mentioned above, however, pertain to impairments Coglitore suffered after the expiration of his insured status.  The Disability Report states that Coglitore "[w]alked to and from the interviewing station with extreme difficulty," but this interview took place much after the relevant period.  The Activities of Daily Living Form describes many of the daily impairments Coglitore has suffered, but it only applies as of the date on which it was filled out: November 8, 2008.  Furthermore, as the ALJ explained, Coglitore is not medically trained to make observations regarding symptoms and thus his allegations on the Activities of Daily Living Form are not decisive.  Moreover, it was Mark Coglitore, Coglitore's son,

who filled out the Activities of Daily Living Form, recording his father's statements, and he cannot be considered a disinterested third party witness by virtue of his familial relationship to Coglitore.

With respect to Dr. Velasquez's opinion, her assessments date to October 2008, and are thereby immaterial to the determination of the severity of Coglitore's impairments prior to December 2005.  Similarly, Slive's assessments regarding Coglitore's vocational opportunities do not pertain to the time period in question.

Coglitore contends that the ALJ did not properly consider his obesity.  The ALJ's report, however, mentions Coglitore's weight.  The evidence in the record indicates that Coglitore was not disabled in any way from June 15, 2000 to December 31, 2005. Moreover, up until now, Coglitore had never claimed that his obesity presented any sort of functional limitations during the relevant period.

Coglitore's testimony, if anything, supports the contention that his impairments were not severe during the relevant period. He alleged that he worked on a self-employed basis at the time and had no difficulty sitting, standing, or walking. Coglitore's assertions are inconsistent with the claim that he was rendered disabled by his alleged impairments.  For these

17

reasons, this Court finds no fault in the ALJ's determination that Coglitore experienced no severe impairment from June 15, 2000 to December 31, 2005.

III.  The Opinion of Coglitore's Treating Physician

Coglitore contends that the ALJ improperly declined to grant controlling weight to the opinion of treating physician Dr. Conte and failed to consider the necessary factors under 20 C.F.R § 404.1527(d).  With respect to the determination of the nature and severity of a claimant's impairment,

> [t]he SSA recognizes a "treating physician" rule of deference to the views of the physician who has engaged in the primary treatment of the claimant. According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given "controlling weight" so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substance evidence in [the] case record.

Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (citation omitted).  Nevertheless, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).  It is the Commissioner who is "responsible for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability."  20 C.F.R. § 404.1527(e)(1).  Thus, "[w]hen other substantial evidence in the record conflicts with

18

the treating physician's opinion . . . that opinion will not be deemed controlling." <u>Snell</u>, 177 F.3d at 133.

If an ALJ declines to afford controlling weight to the opinion of a treating physician, the ALJ is obliged to consider certain factors under 20 C.F.R. § 404.1527(d).  These include:

> (i) the frequency of examination and the length,
> nature and extent of the treatment relationship; (ii)
> the evidence in support of the treating physician's
> opinion; (iii) the consistency of the opinion with the
> record as a whole; (iv) whether the opinion is from a
> specialist; and (v) other factors brought to the
> Social Security Administration's attention that tend
> to support or contradict the opinion.  The regulations
> also specify that the Commissioner will always give
> good reason in [her] notice of determination or
> decision for the weight [she] give[s] [claimant's]
> treating source's opinion.

<u>Id</u>. (citation omitted).  After considering these factors, the ALJ must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." <u>Id</u>. at 33. Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for a remand. <u>Burgess</u>, 537 F.3d at 129.

Coglitore's objections have no merit.  First, as outlined above, substantial evidence in the record indicates that Coglitore suffered no severe impairment from the period beginning on June 15, 2000 and ending on December 31, 2005.  In addition, the ALJ rejected Dr. Conte's opinion because it was made on a date that fell a full three years after the expiration

of Coglitore's coverage.  The ALJ discusses the long-standing relationship between Dr. Conte and Coglitore and the frequency of Coglitore's examinations, catalogs the various pieces of evidence that make Dr. Conte's opinions inconsistent with the record as a whole, and explains that she can afford Dr. Conte's opinions no weight because the date on which they were made falls well after the relevant period.

IV.  Obligation to Seek Additional Information

Coglitore argues that the ALJ had a responsibility to request additional information from Coglitore's treating sources should she have found their assessments inadequate.  "[B]ecause a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."  Burgess, 537 F.3d at 128.  "[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history . . . . "  Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  Id. at 79 n.5 (citation omitted).

Coglitore points to no obvious gaps in the administrative record that would oblige the ALJ to develop the administrative record, and Coglitore's counsel did not claim that such gaps existed during Coglitore's administrative hearing.  To the contrary, the record documents each noteworthy event in Coglitore's medical history.  Furthermore, the ALJ took the additional step of consulting with Dr. Weiss regarding Coglitore's condition during the relevant period.  The existing record was thus sufficient to allow the ALJ to make a disability determination.

V.  Reliance on Non-Treating Sources

Coglitore contends that the ALJ erred in rejecting the opinions of Dr. Conte in favor of those of Dr. Weiss, a non-treating consultative orthopedist.  However, "[t]he opinions of non-examining sources may even override [a] treating source's opinions provided they are supported by evidence of record." Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995).  As already demonstrated, the record as a whole weighs heavily in favor of Dr. Weiss's interpretation.  Thus, the ALJ committed no legal error in relying on Dr. Weiss' opinion over that of Dr. Conte.

VI.  Assessing Coglitore's Credibility

Coglitore submits that the ALJ erred as a matter of law in assessing Coglitore's credibility.  A finding of credibility made by an ALJ is entitled to deference by a reviewing court, and will only be set aside if it is not set forth "with sufficient specificity to enable [a reviewing court] to decide whether [it] is supported by substantial evidence."  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cr. 1984).

The ALJ delineated each part of the record that runs counter to Coglitore's assertions regarding his disability during the relevant period.  She considered Coglitore's own testimony during his hearing, the medical record pertaining to both prior and after the alleged onset date, the submitted Activities of Daily Living form, and the opinions of various medical experts.  The ALJ's opinion therefore was set forth with sufficient specificity to enable a determination that the opinion was supported by substantial evidence.

Coglitore also claims that the ALJ failed properly to consider his work history when assessing his credibility.  "[A] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."  Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983).  It is true that there is no indication in the ALJ's

decision that she considered Coglitore's good work history in her credibility determination.  Nonetheless, as noted above, the ALJ provided specific, record-based reasons for her ruling. Moreover, "it bears emphasizing that work history is just one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony."  Schaal, 134 F.3d at 502.  Because substantial evidence supports the adverse credibility assessment, the ALJ's failure to specifically reference Coglitore's good work history does not constitute legal error.


## CONCLUSION

The Commissioner's May 4, 2012 motion for judgment on the pleadings is granted.  Coglitore's motion for judgment on the pleadings is denied.  The Clerk of Court shall close the case.


SO ORDERED:

Dated:    New York, New York
          June 28, 2012



                                    _____
                                    DENISE COTE
                              United States District Judge